UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD SAMUEL MATTOX,

    Plaintiff,

v.

ADAM D. EDELMAN and ADRIANNE M. NEFF,

    Defendants.
                                            /

CASE NO. 1:12-CV-13762
JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PAUL J. KOMIVES

### REPORT AND RECOMMENDATION ON DEFENDANT NEFF'S MOTION TO DISMISS (docket #7)

I.    RECOMMENDATION: The Court should grant defendant Neff's motion to dismiss.

II.    REPORT:

A.    *Background*

Plaintiff Todd Samuel Mattox is a state prisoner who, at the times relevant to this action, was incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan. On August 24, 2012, plaintiff commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Defendants are Dr. Adam D. Edelman, a contract doctor at the Cotton Facility, and Adrianne M. Neff, a physician's assistant at the Cotton Facility. Plaintiff's claims relate to the treatment received from defendants for chest pain, and allege that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

Plaintiff alleges that on July 25, 2011, he began experiencing chest pains, tightness, shortness of breath, fatigue, and dizziness. He was taken to health service at about 10:30 p.m., where he was

examined by nurse Cindi Murphy, who performed an EKG. The EKG indicated sinus rhythm with left axis deviation. Physician's Assistant (PA) Campell directed Murphy to give petitioner nitroglycerin and aspirin, and to have him transported to an emergency room. Plaintiff was transferred to the Allegiance Hospital emergency room, and was admitted to the hospital. The following day, he was examined by cardiologist Dr. Prabhu, who performed an echo stress test. The test revealed possible ischemia in the basal inferior wall. Dr. Prabhu recommended a cardiac catheterization to pinpoint the problem area and determine the need for a stent, angioplasty, or other procedure to prevent a future heart attack. Defendant Edelman denied authorization for the procedure, and plaintiff was transferred to Duane L. Waters Hospital for further observation. Dr. Prabhu recommended that plaintiff receive a follow-up examination within two weeks, and strongly recommended the catheterization procedure. Plaintiff was released from the hospital on August 2, 2011, with instructions for follow-up treatment. *See* Compl., ¶¶ 8-22. On August 3, 2011, plaintiff had a follow-up examination by Dr. Karen M. Rhodes, who instructed plaintiff to avoid strenuous activity, and to report to health services immediately if he had any chest pain. On the same date, plaintiff filed a grievance against defendant Edelman based on Edelman's failure to authorize the catheterization procedure. The grievance was denied at all steps of the grievance procedure. *See id.*, ¶¶ 23-26.

Plaintiff again experienced chest pain and other symptoms on August 14, 2011. He was taken to health services at about 11:25 p.m., where he was again examined by Murphy. She performed an EKG, and requested an ambulance to have plaintiff transported to the Allegiance Health emergency room. At 11:50 p.m., Murphy called defendant Neff and faxed her a copy of the EKG results. Shortly after, defendant Neff called back and instructed Murphy to send plaintiff back

to his cell. *See id*. at 27-33. Plaintiff was examined the following morning by Dr. Rhodes, who had him transported to the emergency room. *See id*., ¶¶ 34-36. He was examined by cardiologist Dr. Richard Byler on August 16, 2011. Dr. Byler also recommended cardiac catheterization, but the procedure was denied by defendant Edelman. *See id*., ¶¶ 37-38. Plaintiff filed a grievance regarding this incident, but the grievance was denied at all steps. *See id*., ¶¶ 40-43.

On September 9, 2011, plaintiff was again examined by Dr. Rhodes. Because nitroglycerin made plaintiff too dizzy, she ordered plaintiff to stop taking the medication. Dr. Rhodes recommended a cardiology consultation and change in medication. Dr. Edelman denied the request for a consultation. *See id*., ¶¶ 44-55. The remainder of plaintiff's complaint details his further episodes of chest pain and the prison medical providers' attempts to treat his symptoms through medication, but does not allege any additional facts relating to the two named defendants. *See id*., ¶¶ 56-99. Plaintiff alleges that a cardiac catheterization was finally done on April 24, 2012, by Dr. Mark Zender. Dr. Zender's impression was normal left ventricular function and hemodynamics, normal coronary arteries, and adequate medical therapy. *See id*., ¶ 99.

The matter is currently before the Court on defendant Neff's motion to dismiss, filed on October 5, 2012.[1] Defendant argues that plaintiff's complaint fails to state a claim against her for deliberate indifference to his serious medical needs. Plaintiff filed a response to the motion on November 16, 2012, and defendant filed a reply on November 27, 2012.

B.   *Legal Standards*

    1.   *Rule 12(b)(6) Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted is provided

---

[1]Service on defendant Edelman was not effected until June 12, 2013.

for in FED. R. CIV. P. 12(b)(6). In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim. *Id*. at 47. Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47. However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
> 
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
> 
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule

> 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).

    2.    *Eighth Amendment Medical Care Claims*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v.*

*United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious

to warrant Eighth Amendment protection. *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'" *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiff's claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the

7

Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).

C.   *Analysis*

Plaintiff's sole claim against defendant Neff is that she was deliberately indifferent for failing to have him transported to the emergency room when he complained of chest pains on the evening of August 14, 2011. With respect to this claim, plaintiff's allegations are insufficient to establish a claim that Neff was deliberately indifferent that is plausible on its face. As plaintiff's allegations make clear, defendant Neff did not ignore his condition, nor does he allege that she refused to provide treatment for some impermissible reason. Rather, plaintiff's allegations themselves establish that defendant Neff discussed plaintiff's medical history with nurse Murphy, including his July 26, 2011 stress test, and reviewed the EKG results. *See* Compl., ¶ 31. Thus, plaintiff's allegations establish nothing more than that defendant Neff made a medical judgment, based on the evidence available to her, that plaintiff did not need to be transported to the emergency room. Even if this judgment was wrong or negligent, it does not establish defendant Neff's deliberate indifference. As the Supreme Court made clear in *Estelle*, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional

violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. "[A]n inadvertent failure to provide adequate medical care (such as medical malpractice) cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 107. In the medical context, therefore, mere negligence, or even gross negligence, is insufficient to establish an Eighth Amendment violation. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976). Thus, allegations of "an inadvertent failure to provide medical care . . . [or of] negligen[ce] in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06; *see also*, *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. Aug. 4, 1999) (en banc).

The fact that Dr. Rhodes sent plaintiff to the hospital the following morning does not alter this conclusion. First, plaintiff's complaint makes clear that Dr. Rhodes had additional information before her, namely, the facts that petitioner' EKG had not changed over time and that he could not take any more nitroglycerin in the morning because his blood pressure was too low. *See* Compl., ¶ 36. Further, even if Dr. Rhodes's decision reflected disagreement with defendant Neff's judgment, this would not establish that defendant Neff was deliberately indifferent. Just as a plaintiff's disagreement with a prison doctor's chosen course of treatment does not establish deliberate indifference, "[a] difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs." *Acosta v. Naphcare*, No.2:09-cv-1998, 2010 WL 3522356, at *5 (D. Nev. Sept. 2, 2010) (citing

9

*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)); *see also*, *Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000); *Brewer v. Blackwell*, 836 F. Supp. 631, 644 (S.D. Iowa 1993).

Further, plaintiff alleges at most that defendant Neff caused a delay in his receipt of proper treatment. Even assuming that plaintiff could establish that defendant Neff was deliberately indifferent under the subjective prong of the *Farmer*, he must still show a serious medical need under the objective prong of that test by establishing "harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). As the Sixth Circuit has explained, to make this showing in cases in which, as here, "an inmate . . . complains that [a] delay in medical treatment rose to a constitutional violation," the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). Here, plaintiff makes no allegations that could plausibly establish that he suffered any detrimental effect from the delay caused by defendant Neff's failure to send him to the hospital. He was sent to the hospital the following morning, and plaintiff does not allege that he suffered any exacerbation in his symptoms in the interim. Nor does he allege that he received any significant treatment while in the hospital. In fact, he was discharged with nothing more than another recommendation for a cardiac catheterization. *See* Compl., ¶¶ 37-38. And when the catheterization was finally performed in April 2012, it showed normal coronary function. *See id.*, ¶ 99.

Notably, plaintiff does not allege that he has ever suffered a heart attack or other injury, and in particular that he did so as a result of defendant Neff's allegedly inadequate treatment. Plaintiff alleges only that he feared he was at risk for a heart attack and that defendant Neff did not abate this

10

fear through proper treatment, resulting in pain and suffering. Pursuant to 42 U.S.C. § 1997e, however, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff's allegations of pain and suffering do not constitute a compensable physical injury under § 1997e(e) in the absence of any showing of actual physical injury. *See Anderson v. D'Amico*, No. 2:06-cv-00663, 2007 WL 121705, at *2 (D. Nev. Jan. 11, 2007); *Eddings v. Herrington*, No. 4:05-CV-138M, 2005 WL 3134045, at *5 (W.D. Ky. Nov. 23, 2005); *Lennear v. Brevard County Jail*, No. 6:05-CV-1364, 2005 WL 3019282, at *1 (M.D. Fla. Nov. 10, 2005); *McClellan v. Pike County*, No. 1:04-CV-2588, 2005 WL 2234645, at *2 (M.D. Pa. Sept. 14, 2005). The possibility that future harm might befall plaintiff is neither itself a compensable injury, nor does it constitute "physical injury" for purposes of § 1997e(e). *See Leon v. Johnson*, 96 F. Supp. 2d 244, 248-49 (W.D.N.Y. 2000); *Zehner v. Trigg*, 952 F. Supp. 1318, 1322-23 (S.D. Ind.), *aff'd*, 133 F.3d 459, 461 (7th Cir. 1997). *See generally*, *Mason v. Schriro*, 45 F. Supp. 2d 709, 716 (W.D. Mo. 1999) (discussing cases and concluding that § 1997e(e) "is most frequently applied where the plaintiff alleges that defendant's actions have caused him to fear physical injury . . . but he fails to show any physical injury.").

D.  *Conclusion*

For the foregoing reasons, plaintiff's complaint fails allege sufficient facts to state a deliberate indifference claim against defendant Neff that is plausible on its face. Accordingly, the Court should grant defendant Neff's motion to dismiss.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

11

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: June 24, 2013

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Todd Mattox and Counsel of Record on this date.

Dated: June 24, 2013         s/ Lisa C. Bartlett  
                             Case Manager