UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TODD MATTOX,

                Plaintiff,

v.                                           Case Number 12-13762
                                              Honorable Thomas L. Ludington

ADAM EDELMAN and ADRIANNE NEFF,

                Defendants.
_____/

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
REPORT AND RECOMMENDATION, AND
GRANTING DEFENDANT NEFF'S MOTION TO DISMISS**

Plaintiff Todd Mattox has heart problems. He is currently a prisoner in the custody of the Michigan Department of Corrections. This case arises out of the manner that two members of the prison medical staff, Dr. Adam Edelman and Physician's Assistant Adrianne Neff, treated Plaintiff's heart problems. More precisely, it arises from the treatment that he contends they deliberately withheld in violation of his Eighth Amendment rights.

Dr. Edleman's deliberate indifference, the complaint alleges, stretched from July through September 2011, when he repeatedly refused to authorize a cardiac catheterization.[1] Ms. Neff's alleged indifference, in contrast, was limited to three minutes on the night of August 27, 2011, when she declined to send Plaintiff to the hospital.

---

[1] Cardiac catheterization "is an invasive imaging procedure . . . . During a cardiac catheterization, a long, narrow tube called a catheter is inserted through a plastic introducer sheath (a short, hollow tube that is inserted into a blood vessel in [a person's] leg or arm). The catheter is guided through the blood vessel to the coronary arteries with the aid of a special x-ray machine. Contrast material is injected through the catheter and x-ray movies are created as the contrast material moves through the heart's chambers, valves and major vessels." Cleveland Clinic Staff, *Cardiac Catheterization* (Feb. 2011), http://my.clevelandclinic.org/heart/services/tests/invasive/ccath.aspx.

Ms. Neff moves to dismiss the claim against her. Because no facts in the complaint suggest that she perceived a risk of serious harm and then deliberately disregarded that risk, her motion will be granted.

**I**

For purposes of deciding Ms. Neff's motion to dismiss, the following facts from the complaint are assumed to be true.

**A**

On July 25, 2011, Petitioner "experienced symptoms of pain in his chest, left side of the neck, shoulders and arms." Compl. ¶ 8. The next day he was examined by a cardiologist. *Id*. ¶ 14. An echo stress test led the cardiologist to suspect "possible ischemis [sic] in the basal inferior wall."[2] *Id*. Following the examination, the cardiologist recommended cardiac catheterization "to rule out coronery [sic] artery disease." *Id*. ¶ 15. Plaintiff was then referred to Dr. Edelman, who declined to authorize the procedure because he "was not convinced with the results of the echo." *Id*. ¶16. A little less than three weeks passed. *See id*. ¶¶ 16–27.

On the night of August 14, 2011, Plaintiff again "experienced symptoms of pain in his chest, left side of the neck, shoulders and arms." Compl. ¶ 27. Corrections officers learned of Plaintiff's complaints a little after 11 pm and took Plaintiff to the health services department. *Id*. ¶ 28. He arrived there at 11:25 pm and informed the registered nurse "that he had taken his nitro[glycerin] tablets but they was not working." *Id*. ¶¶ 28–29. The nurse then examined Plaintiff and administered an electrocardiogram (EKG).[3] *Id*. ¶¶ 29–30.

---

[2] "Myocardial ischemia, also called cardiac ischemia, can damage [a person's] heart muscle, reducing its ability to pump efficiently. A sudden, severe blockage of a coronary artery may lead to a heart attack." Mayo Clinic Staff, *Myocardial Iischemia* (May 18, 2012), http://www.mayoclinic.com/health/myocardial-ischemia/DS01179.

[3] "An electrocardiogram is used to monitor [a person's] heart. Each beat of [the] heart is triggered by an electrical impulse . . . . An electrocardiogram — also called an ECG or EKG — records these electrical signals as they travel through [the] heart. [A] doctor can use an electrocardiogram to look for patterns among these heartbeats

At 11:50 pm, the registered nurse called Ms. Neff at home. *Id*. ¶ 31. When the call went to the answering machine, the nurse left a message relaying Plaintiff's symptoms and the medical information in Plaintiff's file, including the results of the stress test administered on July 25. *Id*. And the nurse faxed the EKG results. Compl. ¶ 31. (The complaint does not disclose what the EKG results were.)

Three minutes later, Ms. Neff returned the call and directed the nurse to return Plaintiff to his cell for the night. *Id*. ¶ 32. This was the only time Ms. Neff was consulted about Plaintiff's medical condition.

**B**

The next morning, Plaintiff was examined by a prison doctor. *Id*. ¶ 32. She found "no change in EKG from last night" and prescribed no medication. *Id*. ¶ 35. But the doctor had him transported to the hospital for further tests. *See id*. The doctor at the hospital again recommended catheterization; again, Dr. Edelman decided the procedure was unnecessary. *Id*. ¶ 38.

Eventually, Plaintiff did receive the catheterization in April 2012. Compl. ¶ 99. The procedure revealed "normal left ventricular function, coronary arteries, and left ventricular hemodynamics." *Id*. The doctor who performed the catheterization concluded that Plaintiff was receiving "adequate medical therapy." *Id*.

Nevertheless, Plaintiff continues to experience chest pain, dizziness, fatigue, and shortness of breath. *Id*. ¶ 76. And he "is being forced to live in pain and fear of having a heart attack on a daily basis." *Id*. ¶ 81.

So he has filed this civil action.

---

and rhythms to diagnose various heart conditions." Mayo Clinic Staff, *Electrocardiogram* (Oct. 24, 2012), http://www.mayoclinic.com/health/electrocardiogram/MY00086.

**C**

In August 2012, Plaintiff filed a § 1983 action against Dr. Edelman and Ms. Neff. The single-count complaint alleges that their treatment (more precisely, the lack thereof) violated his Eighth Amendment right to be free from cruel and unusual punishment. Ms. Neff then moved to dismiss the claim against her pursuant to Federal Rule of Civil Procedure 12(b)(6).

The case was referred to Magistrate Judge Paul J. Komives. He has issued a report recommending that Ms. Neff's motion be granted. He explains that the complaint's allegations "establish nothing more than that [Ms.] Neff made a medical judgment, based on the evidence available to her, that plaintiff did not need to be transported to the emergency room. Even if this judgment was wrong or negligent, it does not establish [Ms.] Neff's deliberate indifference." Report and Recommendation 8. Moreover, Judge Komives reports, even if Plaintiff could demonstrate deliberate indifference the complaint would still not state a claim because it contains "no allegations that could plausibly establish that he suffered any detrimental effect from the delay caused by [Ms.] Neff's failure to send him to the hospital. . . . Notably, plaintiff does not allege that he has ever suffered a heart attack or other injury, and in particular that he did so as a result of defendant Neff's allegedly inadequate treatment. Plaintiff alleges only that he feared he was at risk for a heart attack." *Id*. at 10.

Plaintiff objects.

**II**

The district court will make a "de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The court is not obligated to review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

### III

### A

Since 1791, the Constitution has expressly prohibited "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court decided in 1976 that this prohibition includes a proscription against deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

But the Supreme Court cautions that the amendment does not prohibit every deprivation suffered by a prisoner. The amendment is only offended by deliberate indifference to a serious medical need. *Id*. Consequently, "an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Id*. at 105–06 (quotation marks omitted) (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 471 (1947) (Frankfurter, J., concurring)).

For a prisoner to establish a deliberate indifference claim, he or she must show both need and knowledge: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Put differently, a deliberate indifference claim "has objective and subjective components." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 834). "The objective component requires the existence of a 'sufficiently serious' medical need." *Id*. at 895. And the subjective component requires precisely that — subjective awareness of that need. *Farmer*, 511 U.S. at 836.

Negligence is thus insufficient to establish a constitutional violation. *Id*. Gross negligence is likewise insufficient. *Id.* Rather, the prison official must have actual knowledge:

"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

Here, the complaint does not allege facts plausibly suggesting that Plaintiff had a serious medical need on the night of August 14, much less that Ms. Neff was deliberately indifferent to it.

That night, the complaint alleges, Plaintiff "experienced symptoms of pain in his chest, left side of the neck, shoulders and arms. Also tightness in the chest, shortness of breath and dizziness." Compl. ¶ 27. Ms. Neff considered these symptoms, the results of Plaintiff's EKG test, and the information in Plaintiff's medical file (including the stress test). *See id*. ¶ 31. She concluded that transporting Plaintiff to the hospital was unnecessary. *Id*. ¶ 32.

The following morning, Plaintiff was examined by a prison doctor. *See id*. ¶¶ 34–35. The complaint does not allege that the doctor prescribed Plaintiff any medication, but she did send him to the hospital for a consultation with a cardiologist. *See id*. ¶¶ 36–37. The complaint does not allege that anyone at the hospital prescribed Plaintiff any medication. *See id*. ¶ 38.

At the hospital, the cardiologist examined Plaintiff and recommended a cardiac catheterization. Compl. ¶ 38. Eventually, Plaintiff received the catheterization. *Id*. ¶ 99. It revealed "normal left ventricular function, coronary arteries, and left ventricular hemodynamics." *Id*. In short, no medical problem. Moreover, the doctor who performed the catheterization concluded that Plaintiff was receiving "adequate medical therapy." *Id*.

To summarize, Plaintiff is complaining that Ms. Neff violated the Eight Amendment by declining to send Plaintiff to the hospital for a test that would reveal that he did not have a serious medical condition. The Eighth Amendment prohibits deliberate indifference. It does not prohibit declining to order unnecessary tests. Ms. Neff's motion to dismiss will be granted.

**B**

Objecting to this conclusion, Plaintiff attempts to inject new facts into the analysis. He writes that he wanted to go to the hospital because they would give him better drugs, elaborating: "Each time while in the hospital plaintiff received Oxygen, Morphine 2–10 mg, Renexa 500 mg, and Beta Blockers to stabilize his angina. The only medicine available at the prison health service was nitro tablets and they wasn't stooping [sic] the pain." Pl.'s Objections 7.

The complaint, however, contains no such assertions. On the contrary, it alleges that while in the hospital in July and August Plaintiff was given "an EKG test, three nitroglycerin tablets and aspirin." Compl. ¶ 21; *see also id*. ¶ 66 (noting that while in the hospital in October a hospital doctor's "*plan* was to increase [Plaintiff's] nitrates, add in some beta blockers and add in some Renexa" (emphasis added)), *and id*. ¶ 68 (noting that the doctor later "deferred approving" these medications). As noted, on the night in question the prison health service provided Plaintiff with both an EKG test and nitroglycerin tablets. So the only difference with the hospital was an aspirin.

Even if the complaint had contained these allegations regarding "Oxygen, Morphine 2–10 mg, Renexa 500 mg, and Beta Blockers," the complaint would nevertheless not state a claim on which relief may be granted. Plaintiff's specific claim against Ms. Neff is that after hearing his symptoms, medical history, and current medication she should have made a different diagnosis. She should have sent him to the hospital.

The Supreme Court cautions that "the question whether . . . diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). The Court explains: "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable

claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

The Sixth Circuit elaborates: "We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (collecting cases).

Here, Plaintiff indisputably received treatment on the night at issue (an EKG test and nitroglycerin pills). He simply disputes its adequacy, asserting that he could have received better care (i.e., better drugs) at the hospital.

Incorrect about both the facts alleged in the complaint and the law that applies to those allegations, his objection will be overruled. And because the above establishes that Ms. Neff is entitled to have the claim against her dismissed, Plaintiff's remaining objections to the additional reasons that Ms. Neff is entitled to judgment are not addressed.

### IV

Accordingly, it is **ORDERED** that the report and recommendation (ECF No. 27) is **ADOPTED**.

It is further **ORDERED** that Plaintiff's objections (ECF Nos. 30, 31) are **OVERRULED**.

It is further **ORDERED** that Ms. Neff's motion to dismiss (ECF No. 7) is **GRANTED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 30, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Todd Mattox #186106 at Lakeland Correctional Facility, 141 First Street, Coldwater, MI 49036 by first class U.S. mail on July 30, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS