UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| TODD MATTOX,<br><br>            Plaintiff,<br><br>v.<br><br>HANRESH PANDYA,<br>CORIZON HEALTH, INC.,<br>KENNETH JORDAN, and<br>WILLIAM C. BORGERDING,<br><br>            Defendants. | Case No. 2:12-cv-13762<br>Honorable Laurie J. Michelson<br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [147] AND GRANTING PANDYA'S AND BORGERDING'S MOTIONS FOR SUMMARY JUDGMENT [102, 114] AND CORIZON'S MOTION TO DISMISS [117]**

Plaintiff Todd Mattox suffers from chronic chest pain and believes that he has received constitutionally inadequate medical care for that condition during his incarceration. He thus sued various healthcare providers associated with the Michigan Department of Corrections for violating the Eighth Amendment. The issue presently before the Court is whether Mattox properly and completely exhausted his grievances as required by the Prison Litigation Reform Act. Magistrate Judge Elizabeth A. Stafford, to whom all pretrial matters have been referred, found that Mattox had not satisfied this requirement. She thus recommends that this Court grant Dr. Hanresh Pandya's and Dr. William Borgerding's motions for summary judgment and Corizon Health, Inc.'s motion to dismiss. She further recommends dismissing Dr. Kenneth Jordan under 28 U.S.C. § 1915(e) because it is apparent from the face of Mattox's Amended Complaint that Mattox did not properly exhaust his claims against Jordan. Mattox objects to the Magistrate Judge's recommendations. After conducting a thorough review of his prison

grievances and conducting a *de novo* review of those portions of the Magistrate Judge's Report and Recommendation to which Mattox has objected, the Court finds that the three grievances Mattox exhausted before filing this suit did not give prison officials fair notice of his claims against Pandya, Jordan, Borgerding, or Corizon. And Mattox has not properly objected to the Magistrate Judge's legal conclusion that he cannot exhaust administrative grievances for claims arising after suit is filed during the pendency of the litigation. For these reasons and those that follow, the Court will overrule Mattox's objections and adopt the Report.

## I.

### A.

When Mattox filed this suit in 2012, he named only two defendants: Dr. Adam Edelman and physician assistant Adrianne Neff. As to Edelman, Mattox claimed that the physician, in his role as the medical director for utilization management for Corizon, twice refused to approve a cardiac catheterization despite that, during two hospitalizations for chest pain, physicians recommended the procedure. As to Neff, Mattox claimed that she refused to send him to the hospital despite being informed of chest pain and an abnormal EKG. For reasons explained at length in prior opinions (and reports and recommendations), Mattox failed to demonstrate that Edelman or Neff violated the Eighth Amendment. Those defendants were thus dismissed from this lawsuit. *See generally Mattox v. Edelman*, No. 12-13762, 2013 WL 3936424 (E.D. Mich. July 30, 2013) (Ludington, J.) (granting Neff's motion to dismiss); *Mattox v. Edelman*, No. 12-13762, 2014 WL 4829554 (E.D. Mich. Sept. 29, 2014) (Michelson, J.) (granting Edelman's motion for summary judgment).

**B.**

In September 2014, shortly before this Court's grant of Edelman's summary-judgment motion, Mattox moved to add claims against Dr. Haresh Pandya, Dr. Kenneth Jordan, Dr. William Borgerding, physician assistant Margaret A. Ouellete, and Corizon Health, Inc. (*See* Dkts. 73, Mot. to Amend; Dkt. 74, Am. Compl. ¶ 2.)

Mattox's proposed amended complaint set forth the following allegations against Dr. Pandya. On September 15, 2011, Dr. Karen Rhodes, a prison physician, noted that Mattox was still experiencing daily angina with exertion and the medication Mattox had been prescribed for his chest pain, a mononitrate, was causing Mattox to experience severe dizziness. (Am. Compl. ¶ 35.) Pandya, a regional medical officer, instructed Rhodes to start Mattox on a dinitrate; Rhodes noted, "per email from D[r]. Pandya(RMO), sometimes pts intolerant of mononitrate can use the dinitrate and slowly titrate up." (*Id.* ¶ 39 & Ex. 13 at Pg ID 1739.) In early October 2011, when Mattox was again hospitalized for chest pain, the hospital physician increased his nitrates and added Ranexa. (*Id.* ¶ 44 & Ex. 15 at Pg ID 1745.) On October 10, 2011, following Mattox's return to prison, Rhodes noted that Mattox was still having chest pain with the dinitrate and that the medication was causing him to experience severe dizziness. (*Id.* ¶ 45 & Ex. 16 at Pg ID 1746.) So she decided to follow the hospital physician's plan by requesting Ranexa, a medication requiring regional medical officer approval. (*Id.* ¶ 45 & Ex. 16 at Pg ID 1746.) On October 12, 2011, Pandya deferred the request, stating, "Please discuss with lead physician or Dr[.] Edelman." (*Id.* ¶ 46 & Ex. 17 at Pg ID 1747.) Dr. Pandya also increased Mattox's dinitrate prescription. (*Id.*) Mattox claims that Pandya continued dinitrate "knowing it was ineffective and in fact exacerbated" his symptoms and thus, was deliberately indifferent to his chest pain. (*Id.* ¶ 47.)

As for Dr. Jordan, Mattox's proposed amended complaint also focused on the denial of Ranexa. Mattox was (again) hospitalized for chest pain in March 2013 and, according to Mattox, "the discharge order included the recommendation o[f] adding Ranexa[.]" (Am. Compl. ¶ 51.) Following his return to prison, Mattox asked Jordan for Ranexa, but "Jordan informed [Mattox] that there was no discharge order for Ranexa[,] and that he was not going to prescribe Ranexa." (*Id.* ¶ 54.) Thus, says Mattox, "Jordan showed deliberate indifference to [my] medical need for additional treatment of Ranexa." (*Id.* ¶ 55.)

Mattox's proposed amended complaint made similar allegations about Dr. Borgerding. In June 2013, Pandya approved a six-month prescription for Ranexa. (Am. Compl. ¶ 61.) But in January 2014, physician assistant Ouellette informed Mattox that Borgerding had denied renewal of that medication because it was not on Corizon's approved formulary list. (*Id.* ¶¶ 65–66.) Borgerding instructed that Mattox was to receive the mononitrate he had been previously prescribed "largely" because of the cost differential between it and Ranexa. (*Id.*) Although Mattox's chest pain began to worsen while on the mononitrate, in February 2014, Dr. Borgerding and Ouellette increased the dosage of that medication. (*Id.* ¶¶ 73–74.) In April 2014, a "Dr. Sidur" became aware that Mattox had been prescribed the mononitrate, immediately issued a stop order, and resubmitted a request for Ranexa. (*Id.* ¶ 76.) But Borgerding denied the request, stating that "with a negative [cardiac] cath he shouldn't need nitro." (*Id.* ¶ 77.) Mattox claims that Borgerding was deliberately indifferent to his chest pain because he knew that the mononitrate was ineffective, knew that Mattox had suffered no chest pain while on Ranexa, yet refused to approve Ranexa on the faulty reasoning that Mattox had a negative cardiac catheterization in 2012. (*See id.* ¶¶ 79–83.)

Finally, against Corizon, Mattox proposed to add claims that the company, in rendering health-care services to Michigan prisoners, had an unconstitutional policy and practice of placing cost control over quality of care. (Am. Compl. ¶¶ 86–87.)

## C.

In September 2014, this Court (largely because the magistrate judge then assigned the case had already opined on the plausibility of Mattox's claim against Pandya) granted Mattox's motion to amend insofar as he sought to add claims against Pandya. *Mattox v. Edelman*, No. 12-13762, 2014 WL 4829583, at *6 (E.D. Mich. Sept. 29, 2014). But the Court "ma[de] no finding on whether Mattox has pled viable claims against any of the other new proposed defendants[.]" *Id.*

In March 2015, Magistrate Judge Stafford permitted Mattox to add claims against Jordan, Borgerding, and Corizon. *See Mattox v. Edelman*, No. 12-13762, 2015 WL 1005263, at *2–4 (E.D. Mich. Mar. 6, 2015). Notably, the Magistrate Judge permitted those claims to be added pursuant to Federal Rule of Civil Procedure 15(d) (not Rule 15(a)) because Mattox's motion sought to "add[] allegations that pertain to events that occurred after his original complaint was filed." *Id.* at *2; *see also* Fed. R. Civ. P. 15(d) (permitting, under certain conditions, "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented"). The Magistrate Judge concluded that Mattox had not stated a claim against Ouellette and thus denied his motion to add claims against her as futile. *Mattox*, 2015 WL 1005263, at *4.

## D.

Pandya and Borgerding have since moved for summary judgment under Federal Rule of Civil Procedure 56, while Corizon seeks dismissal under Rule 12(b)(6). Pandya only argues that

none of Mattox's five prison grievances exhausted the claims against him. (*See generally* Dkt. 102, Pandya's Mot. Summ. J.) Borgerding also argues non-exhaustion, but adds that he was not deliberately indifferent to Mattox's serious medical needs. (*See generally* Dkt. 114, Borgerding's Mot. Summ. J.) Corizon "adopts" the exhaustion arguments of Pandya and Borgerding, but also argues that Mattox's claims of an unconstitutional policy or custom must be dismissed as implausible. (*See generally* Dkt. 117, Corizon's Mot. to Dismiss.)

### E.

Magistrate Judge Stafford recommends granting Pandya's, Borgerding's, and Corizon's motions on exhaustion grounds. (Dkt. 147, R. & R.); *Mattox v. Edelman*, No. 12-13762, 2016 WL 398242, at *1–3 & n.2 (E.D. Mich. Jan. 12, 2016) ("Since the Court here is recommending dismissal for failure to exhaust, it will not address any arguments regarding the merits of Mattox's complaint."). She concludes that none of the five grievances Mattox took through the final step of the grievance procedure properly exhausted the claims (regarding proper angina medication) against Pandya, Jordan, Borgerding, or Corizon. *See Mattox*, 2016 WL 398242, at *1–3. Although Jordan has not moved for summary judgment (he has not yet been served), the Magistrate Judge recommends dismissing him under 28 U.S.C. § 1915(e): it is plain from the face of the Amended Complaint, she says, that Mattox has not exhausted his claims against Jordan. *Id.* at *3.

Mattox objects. (Dkt. 150, Pl.'s Objs.)

### II.

The Court considers Mattox's objections without deference to the Magistrate Judge's report. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is made.").

### III.

### A.

The Prison Litigation Reform Act requires a state prisoner to give the state fair and full opportunity to remedy his claims before he can sue over them under federal law. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claim.").

Exhaustion is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 212 (2007). So to be granted summary judgment on non-exhaustion grounds, a prison official (or, here, prison doctor) must convince the court that no reasonable jury could find the claim in question exhausted. *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012) ("In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's initial summary judgment burden is higher in that it must show . . . that the evidence is so powerful that no reasonable jury would be free to disbelieve it." (internal quotation marks omitted)).

**B.**

Mattox believes that Pandya, Borgerding, and Corizon have not carried their summary-judgment burden and makes three objections to the Magistrate Judge's contrary conclusion. None persuade.

**1.**

In his first objection, Mattox asserts that, contrary to the Magistrate Judge's conclusion, the three grievances he filed *before* initiating this lawsuit exhausted his claims against Pandya, Jordan, Borgerding, and Corizon. (*See* Pl.'s Objs. at 1–5.) The Court disagrees.

In her exhaustion analysis, the Magistrate Judge found that while Mattox did exhaust three grievances prior to filing this lawsuit, "Mattox did not complain in these grievances that he was wrongly being denied Ranexa." *Mattox*, 2016 WL 398242, at *1. This was problematic for Mattox, reasoned the Magistrate Judge, because Mattox's claims in this lawsuit against Pandya, Jordan, and Borgerding were based on their denials of Ranexa. *Id.* at *2. Mattox objects to this characterization. He says that his allegations about the physicians' failures to provide Ranexa were merely the factual bases for his more general claim that they were deliberately indifferent to his pain "by consciously and continuously providing a treatment plan they knew to be inadequate . . . and[] which defendants knew to cause severe side effects." (Pl.'s Objs. at 1; *see also id.* at 5 (characterizing claims in this case as the election of an ineffective treatment plan over an effective one to save money).) And Mattox claims that the three grievances he exhausted prior to filing the lawsuit raised this general deliberate indifference claim. (Pl.'s Objs. at 2 ("Prior to filing this Civil Rights Action in August 2012, Plaintiff filed three (3) Grievances . . . for denial of adequate medical treatment that constituted 'Deliberate indifference'[.]").)

The Court takes something of a middle ground. Mattox is correct that at a high level of generality, this case is about medical professionals acting with deliberate indifference to his chronic chest pain. But Mattox has accused different medical professionals of being deliberately indifferent to his pain in different ways. As summarized above, Mattox faults Edelman for not approving a cardiac catheterization procedure. And Mattox's grievance against Neff is that she did not send him to the hospital when he was experiencing chest pain, nitroglycerine was ineffective, and an EKG was abnormal. And Mattox accuses Pandya, Jordan, and Borgerding of continuing to prescribe certain medications (mononitrates or dinitrates) despite knowing that those medications did not control his chest pain and caused him severe side effects. In other words, all the individuals named in this lawsuit are alleged to have acted with deliberate indifference to Mattox's chest pain, but the manner in which they are alleged to have done so differ in material ways. As such, at a fair level of generality, the Court believes that Mattox's claims in this lawsuit against Pandya, Jordan, and Borgerding are that the three physicians acted with deliberate indifference to Mattox's chest pain by prescribing medication they knew to be ineffective and caused him severe side effects. (*See* Pl.'s Objs. at 1.)

So the question becomes whether any of the three grievances Mattox exhausted prior to filing this lawsuit gave prison officials "a fair opportunity" to remedy Mattox's claims that Pandya, Jordan, or Borgerding provided medication that did not help his chest pain and caused side effects. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("The point of the [Prison Litigation Reform Act's] exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court."); *see also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that

9

the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . . But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.").

The answer is relatively straightforward as to the first- and second-filed grievances, JCF-1632 and JCF-1747. Although those grievances did generally assert chest pain and violations of the Eighth Amendment, they did not complain of Pandya's, Jordan's, or Borgerding's conduct as alleged in this suit. Nowhere in those grievances did Mattox assert that the medication he had been prescribed for his chest pain was ineffective and caused him severe side effects. Notably too, the "relief sought" in JCF-1632 was the catheterization procedure that Edelman denied (Dkt. 102–3 at Pg ID 2134) and the "relief sought" in the JCF-1747 grievance was to be brought to an emergency room or hospital whenever symptoms were similar to those reported to Neff (Dkt. 102-3 at Pg ID 2128). In other words, JCF-1632 and JCF-1747 exhausted claims as to the original defendants to this lawsuit, not Pandya, Jordan, or Borgerding. No reasonable jury could think otherwise.

The third grievance that Mattox exhausted prior to suing, JCF-1974, presents a little closer call. In the JCF-1974 grievance, Mattox provided that he attempted to talk with Rhodes about the denial of the cardiac catheterization and whether "they" had "come up with an alternate treatment plan yet[.]" He also asserted that he was "being denied proper medical treatment[] for his serious medical condition diagnosed as Angina of the heart," that he was suffering from chest pain on a "daily basis," and that despite writing to a slew of prison staff or officials about the

10

denial of medical care (he identified most by name), he had "not received any treatment for his condition[.]" (Dkt. 74-1 at Pg ID 1799-1800.) Mattox also advised that he had written the MDOC's director and his warden asking them to provide "proper medical treatment, to stop his pain and suffering." (*Id.* at Pg ID 1801.) But within the context of the entire grievance, these complaints were still related to the failure to give him a cardiac catheterization. And for two main reasons, the Court believes that no reasonable jury would think that JCF-1974 exhausted Mattox's claims against Pandya, Jordan, or Borgerding. First, the grievance does not specifically complain that the *medication* Mattox had been prescribed was ineffective or causing him side effects. Indeed, it would be odd if it had, as just days before filing the grievance Mattox's medication had been changed from a mononitrate to a dinitrate, and thus, the efficacy of the dinitrate had not yet been evaluated. Second, and relatedly, the specific "relief sought" in the JFC-1974 grievance had nothing to do with being prescribed a different medication. Instead, Mattox made this request: "Grievant requests to be taken to an off-sight [*sic*] civilian Hospital so that the cardiologist doctors could *do the cardio cath* so that they could fix the problem with grievant heart. And any other medical *procedure* that come from the results." (Dkt. 74-1 at Pg ID 1801 (emphasis added).) And the cardiac catheterization was still the relief that Mattox sought when he appealed the JCF-1974 grievance. At Step II Mattox provided: "The cardiologist doctors know that Grievant met the criteria for a cardiac cath in which these doctors made the recommendation twice for the cardiac cath be done. Grievant is still being denied medical treatment, Grievant request's *the same resolution as stated in his step [i] grievance*." (Dkt. 74-1 at Pg ID 1803 (emphasis added).) And, at his final-step appeal, Mattox asserted: "Here all of these staff members stated in Mattox['s] step [i] grievance action was *deliberate indifferent to Mattox serious medical need for a[] Cardiac Cath*. Here Mattox is being denied medical

11

treatment by these staff members, [t]his denial of medical treatment is still ongoing." (Dkt. 74-1 at Pg ID 1803 (emphasis added).) There is no mention anywhere in the grievance of the medication Ranexa. In other words, while the JCF-1974 grievance did generally allege inadequate medical care, a reasonable jury could only fairly read the grievance as specifically complaining about Edelman's denial of a cardiac catheterization and not Pandya's, Jordan's, or Borgerding's prescription of ineffective medications. It follows that JCF-1974 did not give prison officials "a fair opportunity under the circumstances to address the problem that . . . later form[ed] the basis of [Mattox's] suit" against Pandya, Jordan, or Borgerding. *See Johnson*, 385 F.3d at 522.

While the Court has thus far focused on Mattox's claims against the three physicians, a review of the three grievances that Mattox exhausted before filing suit reveals that none gave fair notice of a policy or practice claim against Corizon. It is true that in these grievances Mattox asserted that Edelman, on behalf of Prison Health Services or Corizon, had denied the procedure "for budgetary reason(s) only." (Dkt. 102-3 at Pg ID 2134; *see also* Dkt. 74-1 at Pg ID 1800.) But grieving that Corizon denied one procedure for budgetary reasons did not give prison officials fair notice that Corizon regularly engaged in that practice. Mattox's grievances would not reasonably prompt officials to engage in a system-wide investigation. So the Court does not find that the three grievances Mattox exhausted pre-suit exhausted his claims against Corizon. For similar reasons, the Court finds that Mattox's conspiracy claim is not exhausted.

Accordingly, the Court overrules Mattox's first objection.

**2.**

Mattox's second objection relates to the portion of the Magistrate Judge's Report and Recommendation addressing the two grievances he exhausted *after* this lawsuit was filed, LCF-0355 and LCF-0159. (Pl.'s Objs. at 5–6.)

Some additional background is helpful in understanding this portion of the Magistrate Judge's report and the scope of Mattox's objection. Jordan and Borgerding did not become involved in Mattox's treatment until well after this suit was filed. But Mattox did exhaust the LCF-0355 and LCF-0159 grievances before those two defendants were added to this lawsuit. In particular, in April 2013, Mattox filed grievance LCF-0355 against Jordan for the physician's refusal to prescribe Ranexa in March 2013. (Dkt. 74-1 at Pg ID 1806.) And MDOC denied Mattox's Step III appeal of this grievance in September 2013. (Dkt. 102-3 at Pg ID 2115.) In February 2014, Mattox filed grievance LCF-0159 regarding the discontinuance of Ranexa. (Dkt. 74-1 at Pg ID 1812.) He named Ouellette, Corizon, and "the current[ly] unknown RMO provider who discontinued the only drug that has ever controlled Grievant's chronic angina"; the then-unknown RMO is, apparently, Borgerding. MDOC denied Mattox's Step III appeal of this grievance in June 2014. (Dkt. 102-3 at Pg ID 2115.) Jordan, Borgerding, and Corizon were added to this case in March 2015. Thus, both the LCF-0355 and LCF-0159 grievances were taken through the final step of the grievance process before Mattox's claims against Jordan or Borgerding were added to this case pursuant to Rule 15(d).

This fact is relevant because some courts have held that a plaintiff complies with the PLRA's exhaustion requirement for claims arising after suit is filed by completing the grievance process during the litigation and then adding those claims under Rule 15(d). *See, e.g.*, *Murphy v.*

13

*Grenier*, No. 07-CV-15248-DT, 2009 WL 1044832, at *20 (Mar. 4, 2009) *report and recommendation adopted by*, 2009 WL 1044832 (E.D. Mich. Apr. 20, 2009).

The Magistrate Judge acknowledged this authority, but felt compelled to follow contrary case law, including *Cox v. Mayer*, 332 F.3d 422 (6th Cir. 2003). There, the Sixth Circuit stated—in dicta—that the plaintiff could not cure his failure to exhaust by using Rule 15(d) to add to his pleadings the fact that he had been released from prison (and thus, was no longer subject to the PLRA's exhaustion requirement). *Id.* at 428. Largely based on *Cox*, the Magistrate Judge concluded that grievances LCF-0355 and LCF-0159 did not satisfy Mattox's obligation to exhaust his claims against Borgerding, Jordan, or Corizon. *Mattox*, 2016 WL 398242, at *3 ("As this Court must follow *Cox*, it recommends that Mattox's claims be dismissed without prejudice because they were not exhausted prior to him filing suit in August 2012.").

Mattox does not dispute—at least in any way that could be considered a proper objection—the Magistrate Judge's view of the law, i.e., that a prisoner cannot exhaust claims arising after he files suit by completing the grievance process as to those claims during litigation and then supplementing or amending the complaint pursuant to Rule 15(d). As such, the Court does not take a position on the split in authority. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) ("[T]he failure to object may constitute a procedural default waiving review even at the district court level."); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012) ("The Court is not obligated to review the portions of the report to which no objection was made." (citing *Thomas*, 474 U.S. at 149–52)).

Mattox does argue that the portion of the Magistrate Judge's report pertaining to the two LCF grievances is erroneous because "the defendants' denial of Ranexa does not allege a new issue or claim, but is a continuation of the claim that defendants adopted an inadequate and less

14

effective medical treatment plan in treating plaintiff's serious medical condition[.]" (Pl.'s Objs. at 5.) Mattox explains that when he moved to amend his complaint, "it was only to include discovered defendants whose actions covered plaintiff's original claim of deliberate indifference[.]" (*Id.*)

It thus appears that Mattox argues that because his claims against Pandya, Jordan, Borgerding, and Corizon were merely an extension of his original claims, the grievances he exhausted before filing this lawsuit exhausted his claims against those four defendants. But the Court has already addressed this argument: the three exhausted grievances simply did not give prison officials a fair opportunity to remedy a claim that Mattox was being prescribed ineffective medication for his chest pain.

Accordingly, the Court overrules Mattox's second objection.

### 3.

Mattox's third objection is like his first. In asserting that the Magistrate Judge erred in recommending that Jordan be dismissed *sua sponte*, Mattox asserts that Jordan's conduct was merely "a continuation of actions by the MDOC's medical staff that gave rise to plaintiff's claim of deliberate indifference which was stated in his original complaint." (Pl.'s Objs. at 6.) Mattox argues that because his Eighth Amendment claim is based on deliberate indifference to a chronic condition, the Court must treat as exhausted denials of medical treatment that occurred before and after the filing of his grievances (Mattox does not say which in particular). (*See* Pl.'s Objs. at 7.) In support of this assertion he relies on the "continuing violations doctrine" as applied in *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008). (Pl.'s Objs. at 7.)

In *Ellis*, after two years of suffering from severe lower-back and abdominal pain and being told by prison medical staff to take aspirin and lie down, Ellis filed a grievance. 568 F.

15

Supp. 2d at 779–80. On the grievance form he provided that the date of the grievance was "ongoing" and asserted, "I have complained about severe abdomen and lower back pain since 2004, but I have yet to receive treatment for the pain which is getting worse." *Id.* at 780. Although Ellis exhausted his grievance, the defendants moved to dismiss Ellis' federal lawsuit for constitutionally inadequate medical care on the ground that the grievance was not filed in a timely manner: Ellis was "complaining of pain that date[d] back to 2004, yet he only filed a single grievance in 2006." *Id.* at 781.

Although acknowledging that MDOC's grievance procedure only gave prisoners a week to grieve misconduct, the court in *Ellis* found the grievance timely. The court reasoned that when the claim is deliberate indifference to a chronic condition, the time the wrongful conduct occurs is difficult to pinpoint:

> For an acute medical condition, like a heart attack or a diabetic coma, the time of the failure to treat (and therefore the time of the Eighth Amendment violation) can be determined with some precision, and therefore the time limit for filing a grievance can be readily established. Such is not the case for a chronic medical condition that is ignored, or for which treatment is delayed or inadequate. The seriousness of a chronic condition may not become obvious to prison officials until some time passes, and the indifference to that condition—and the resulting pain suffered by the prisoner that equates to the infliction of punishment—may not become manifest until then as well.

568 F. Supp. 2d at 783. The court thus concluded that a chronic medical condition is "properly identified as 'ongoing,' and a grievance that identifies the persistent failure to address that condition must be considered timely as long as the prison officials retain the power to do something about it." *Id.*

*Ellis* does not help Mattox. To the extent that Mattox argues that, under *Ellis*, the two LCF grievances exhausted all prior acts of deliberate indifference to his chest pain, the Court disagrees. In particular, nothing in *Ellis* affects the Magistrate Judge's finding that a prisoner

16

must exhaust grievances—even for conduct arising after suit—prior to filing suit. And, as explained, Mattox has not raised a proper objection to the Magistrate Judge's understanding of the interplay between the PLRA's exhaustion requirement and Rule 15(d).

As for the three JCF grievances Mattox exhausted before initiating this case, *Ellis* is not on point for two reasons. First, this is not a case where it is difficult to determine when the alleged deliberate indifference occurred—the Amended Complaint says that happened when Dr. Pandya denied Ranexa in October 2011, when Dr. Jordan denied Ranexa in March 2013, and when Dr. Borgerding denied Ranexa in January and April 2014. Second, *Ellis* did not hold that a grievance about deliberate indifference to a chronic condition can exhaust *future* deliberate indifference to that condition, and, as explained, all the denials of Ranexa occurred after the three JCF grievances were filed.

On this last point, better for Mattox is a case *Ellis* discussed: *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004). There, during an 18-month period of incarceration, prison officials allegedly failed to protect a prisoner from repeated rapes and sexual assaults despite numerous pleas for protection. *See id.* at 512–14. Johnson sued the officials, and the Fifth Circuit was confronted with the question of whether a grievance could exhaust conduct that occurred after the grievance had been filed. *Id.* at 519–21. The court concluded that it could: "As a practical matter, Johnson could not have been expected to file a new grievance every fifteen days, or each time he was assaulted (which, according to him, was virtually every day), for the entire period during which he remained unprotected in the general population." *Id.* at 521.

Despite some similarities though, there is a critical difference between *Johnson* and this case. In *Johnson*, the "character" of the grievances was that Johnson was "frequently being assaulted and ha[d] repeatedly but unsuccessfully sought a change in housing status through the

17

established administrative channels." 385 F.3d at 522. And the conduct that occurred after Johnson had filed his grievances was of the same character: the housing committee's continued failure to move Johnson to a different unit. *See id.* at 513, 519. In other words, the wrong Johnson grieved had simply reoccurred and so there was no point in requiring Johnson "to file repeated grievances reminding the prison officials that he remained subject to attack in the general population." *Id.* at 521. Here, however, the three grievances Mattox exhausted prior to filing this lawsuit did not give prison officials a fair opportunity to address the claim that physicians were continuing to prescribe Mattox ineffective medications for his chest pain. As explained, they focused on obtaining a cardiac catheterization and assurance of being sent to the emergency room in certain circumstances. Thus, Pandya's, Jordan's, and Borgerding's conduct was not simply a reoccurrence of the conduct that Mattox had already grieved. *Johnson*, therefore, is inapposite.

Accordingly, the Court overrules Mattox's third objection.

### IV.

The Court has conducted a *de novo* review of those portions of the Magistrate Judge's Report and Recommendation to which Mattox has objected. For the reasons given, the Court OVERRULES Mattox's objections (Dkt. 150) and ADOPTS the Report and Recommendation (Dkt. 147). It follows that the Court GRANTS Pandya's Motion for Summary Judgment (Dkt. 102), Borgerding's Motion for Summary Judgment (Dkt. 114), and Corizon's Motion to Dismiss (Dkt. 117), and dismisses Jordan pursuant to 28 U.S.C. § 1915(e). Mattox's claims against Pandya, Jordan, Borgerding, and Corizon are DISMISSED WITHOUT PREJUDICE. As this opinion and order disposes of all remaining claims in this case, the Court will enter judgment and

close this case.

       SO ORDERED.

                               s/Laurie J. Michelson
                               LAURIE J. MICHELSON
                               UNITED STATES DISTRICT JUDGE

Dated: March 14, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 14, 2016.

                               s/Jane Johnson
                               Case Manager to
                               Honorable Laurie J. Michelson