UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD MATTOX,

      Plaintiff,               Civil Action No.: 12-13762
                                  Honorable Laurie J. Michelson

v.                            Magistrate Judge Elizabeth A. Stafford

HANRESH PANDYA, D.O.,
*et al.*,

      Defendants.

_____/

**REPORT AND RECOMMENDATION ON
DEFENDANT RICHARD WOREL, D.O.'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 215]; DEFENDANTS WILLIAM
BORGERDING, D.O. AND HARESH PANDYA, D.O.'S MOTION
FOR SUMMARY JUDGMENT [ECF NO. 224]; AND DEFENDANT
KENNETH JORDAN, M.D.'S MOTION TO DISMISS [ECF NO. 225]**

## I.   Introduction

Plaintiff Todd D. Mattox, a *pro se* prisoner currently in the custody of

the Michigan Department of Corrections (MDOC), filed his initial complaint

in 2012 under 42 U.S.C. § 1983 for alleged violations of his Eighth

Amendment rights.  [ECF No. 1].  The Honorable Laurie J. Michelson

referred all pretrial proceedings to the undersigned under 28 U.S.C. §

636(b).  [ECF No. 166].  In December 2017, Mattox amended his complaint

for the fourth (and final) time.  [ECF No. 184].  Three dispositive motions

are now ready for the Court's review.  For the following reasons, the Court

**RECOMMENDS** that Defendant Richard Worel, D.O.'s motion for summary judgment [ECF No. 215] be **GRANTED**; Defendants William Borgerding, D.O. and Hanresh Pandya, D.O.'s motion for summary judgment [ECF No. 224] be **GRANTED IN PART AND DENIED IN PART**; and Kenneth Jordan, M.D.'s motion to dismiss [ECF No. 225] be **DENIED**.

## II.  Background

During the relevant times, Drs. Borgerding and Pandya were regional medical officers of the MDOC.  Dr. Worel treated Mattox at the West Shoreline Correctional Facility, and Dr. Jordan treated him at the Lakeland Correctional Facility.  Mattox has a more than ten-year history of chronic angina, resulting in tightness and pain in his chest, radiating to the neck and left arm, nausea, sweating and dizziness.[1]  [ECF No.  217-1, PageID.3735-36].  He complains that defendants were deliberately indifferent to his serious medical needs, and caused him pain and suffering, by prescribing him Imdur and Isodril for his angina despite evidence that

---

[1]These angina symptoms were described in a November 2011 report. [ECF No.  217-1, PageID.3735].  They are Mattox's typical symptoms, but the Court will not detail every symptom when describing his other medical reports and will instead refer to them generically as "angina symptoms." The Court recognizes that some medical providers have opined that Mattox did not actually have angina.  [*See, e.g.*, ECF No. 217-1, PageID.3746-47]. The use of the phrase "angina symptoms" is used for brevity in this report; it is not a factual finding.

those medications were ineffective.  [ECF No. 184].  Mattox alleges that

another medication—Ranexa—controlled his symptoms.  [*Id.*]

Arnold J. Feltoon, M.D., who is certified in correctional health care,

explains that Isosorbide monohydrate (marketed as "Imdur") and Isosorbide

dinitrate (marketed as "Isordril") are nitrates used to treat angina and

congestive heart failure.  [ECF No. 215-4, PageID.3716].[2]  Dr. Feltoon

states that nitrates can lower blood pressure due to dilation of the blood

vessels, so treating doctors may have to adjust dosages or try various

preparations to find the best tolerated medication.  [*Id.*, PageID.3717].

Ranexa is a non-nitrate medication for chronic angina that, like its nitrate

counterparts, acts to improve blood flow through the heart.  [*Id.*,

PageID.3717].  Another medication, nitroglycerine, relaxes heart muscles.

[*Id.*, PageID.3716].

In August and September 2011, MDOC medical provider Karen

Rhodes, D.O., reported that Mattox had "unstable" angina and that he was

unable to tolerate Imdur, so she requested a cardiology referral to change

his medications.  [ECF No. 74, PageID.1728-29].  Dr. Rhodes updated

---

[2] The affidavit found here is signed but not notarized, but Dr. Felton
submitted a later signed and notarized affidavit stating that he would testify
in accordance with his expert assessments and opinions in his expert
report.  [ECF No. 241].

3

Mattox's chart later that month to state that Dr. Pandya had relayed that patients who are intolerant to Imdur sometimes fair better on dinitrate, so Dr. Rhodes prescribed Mattox isosorbide dinitrate.  [*Id.* at PageID.1739-40]. Dr. Pandya approved Dr. Rhodes's request for this non-formulary medication with the "ability to titrate up based on angina response."  [ECF No. 258, PageID.4404].

Mattox alleges in his fourth amended complaint that he had a cardiac follow-up with Dr. Rhodes on September 23, 2011, and was still having angina symptoms, [ECF No. 184, PageID.3408], but the Court was unable to locate a corroborating medical record.  He also alleges that, on October 7, 2011, he was transported by ambulance for emergency treatment at Allegiance Health for chest pain radiating to his neck, jaw and down his left arm.  [*Id.*].  The record from that date refers to a cardiology consultation with no reference to Mattox needing emergency treatment, and Cathy Glick, M.D., described him as being "in no distress" during the examination. [ECF No. 74, PageID.1744-45].  Dr. Glick recommended increasing nitrates, adding beta blockers, and adding Ranexa to control angina symptoms.  [*Id.*].  But the Ranexa was nonformulary, so Dr. Pandya deferred the prescription because it required approval; he instructed Dr. Rhodes to consult with Adam Edelman, M.D., the medical director for

4

utilization management for Corizon Health, and to increase the dosage of isosorbide dinitrate.  [*Id.*, PageID.1747].

When he was examined in November 2011, Bhamini Sudhir, M.D., reported that he was still taking isosorbide dinitrate and that "patient is relieved with the second nitro."  [ECF No. 217-1, PageID.3735-38].  Mattox alleges that he required medical attention for angina symptoms in January and February 2012, [ECF No. 184, PageID.3409], but the next report appearing in the record is dated April 2012.  [ECF No. 74, PageID.1748-52].  At that time, Mattox was admitted to Allegiance Health for angina symptoms and received a cardiac catherization, the results of which were unremarkable.  [*Id.*].  Dr. Glick noted that Mattox had "problems with hypotension after nitroglycerin and cannot tolerate way long-acting nitrates. He [was] only on 2.5 mg of Isordil 3 times a day which clearly is not controlling his angina."  [*Id*].  Mattox was administered Ranexa and nitroglycerin during his four-day hospitalization.  [*Id.*].  But Mattox alleged in a grievance that it was discontinued before he was discharged.  [ECF No. 74-1, PageID.1813].

Mattox states that, when he returned to MDOC, Dr. Pandya prescribed Imdur and isosorbide-dinitrate instead of Ranexa, which resulted in him experiencing angina symptoms.  [ECF No. 184,

PageID.3411].  He alleges that he wrote kites in May 2012 asking for
Ranexa and that Dr. Jordan instead prescribed him Imdur in January 2013.
[*Id.*, PageID.3411].  But there are no medical reports from this period in the
record.  The records skip from April 2012, when Mattox was discharged
from Allegiance Health, to March 2013.  [ECF No. 74, PageID.1757].  The
March 2013 report is a discharge order from Community Health Center of
Branch County on which a physician wrote, "consider adding Ranexa" if all
tests were negative and he continued to have angina symptoms, and
"resume [illegible] medications."  [*Id.*].  The discharge order is the only
document in the record from this Community Health Center stay.

According to Mattox's fourth amended complaint, he had a follow-up
appointment with Dr. Jordan the day after his discharge from the
Community Health Center.  [ECF No. 184, PageID.3411-12].  He states
that he requested the recommended Ranexa, but that Dr. Jordan denied
that request.  [*Id.*].  No record of this appointment is in the record, but
Mattox does include his formal grievance against Dr. Jordan for failing to
prescribe him Ranexa as "ordered" by the doctor at Community Health
Center.  [ECF No. 74-1, PageID.1806-11].  Mattox asserted that Ranexa
had been recommended several times previously.  [*Id.*].  The response to
the grievance inaccurately suggested that Ranexa was not mentioned by

6

the Community Health Center, [*Id.*], but Mattox was also inaccurate in stating that Ranexa was "ordered" when the discharge order suggested only that Ranexa be "considered."  [ECF No. 74, PageID.1757].

Mattox's fourth amended complaint states that he was admitted to Community Health Center's emergency room for angina symptoms in June 2013, and that he was prescribed nitroglycerin, [ECF No. 184, PageID.3412], but there is again no medical documentation of that visit in the record.  In a follow-up assessment, Margaret Ouellette, PA-C, noted that Mattox was gaining weight, was unable to walk for extended periods of time, and that his chest pain was not adequately controlled by Imdur.  [ECF No. 74, PageID.1758-59].  PA Ouellette thus requested that Mattox be prescribed Ranexa for 60 days, noting that it had been recommended both recently and in the past.  [*Id.*].  Dr. Pandya approved the prescription the next day.  [*Id.*, PageID.1759].  The next month, Dr. Pandya indicated that Mattox had reported a decrease in the frequency of the chest pain, and approved Ranexa for another six months.  [*Id.*, PageID.1760].

But in December 2013, when presented with a request to renew the prescription for Ranexa, Dr. Borgerding deferred the request because Mattox "had a normal cardio cath[eterization] in 2012."  [ECF No. 74,

PageID.1764].  PA Oullette therefore prescribed Mattox Imdur in January 2014.  [*Id.* at PageID.1765].

In February 2014, Mattox filed a formal grievance against PA Ouellette and Dr. Borgerding for refusing to refill his Ranexa prescription; the grievance was denied.  [ECF No. 74-1*,* PageID.1812-21].  Mattox wrote in the grievance that he had suffered "no anginal pain since being put on the Ranexa regimen," but that the severe pain, dizziness, fatigue and shortness of breath had returned after the prescription was not renewed. [*Id.*, PageID.1814].  A nurse responded to the grievance that Ranexa was discontinued because of the 2012 normal catheterization.  [*Id.*, PageID.1815].  Mattox responded that the 2012 catheterization was irrelevant; that his "medical records will substantiate that he cannot tolerate the drug Imdur and that it does not relieve his symptoms, which is why it was finally discontinued and Ranexa was approved"; and that, despite his inability to tolerate Imdur, it had now been prescribed at twice the daily dosage as before.  [*Id.*, PageID.1816].

In an affidavit, Mattox reiterates that, when he was treated with Ranexa, he suffered no side-effects, required no hospitalizations and his chest pain was under control.  [ECF No. 258, PageID.4397].  He again

8

asserts that his chest pains resumed after his Ranexa prescription was terminated.  [*Id.*].

Dr. Feltoon, whose expert report was filed in support of Dr. Worel's motion for summary judgment, contradicts Mattox's claim that he had no angina symptoms during the eight-month period during which he used Ranexa.  [ECF No. 215-4, PageID.3714-15].  Dr. Feltoon stated that after Mattox started taking Ranexa, he "continued to have episodes of the same type of chest discomfort that he'd had previously."  [*Id.*].   But while Dr. Feltoon's report is otherwise specific about the medical attention Mattox received, he describes no medical care or complaints of chest pain while Mattox was prescribed Ranexa.  [*Id., PageID.3713-18*].  And the Court can find no record of Mattox complaining of angina symptoms or receiving medical attention for them from June 2013 through the end of January 2014—the period in which he was prescribed Ranexa.

Dr. Feltoon also represented that Dr. Borgerding discontinued Mattox's Ranexa prescription in part because of his alleged continuing symptoms when he used the medication.  [*Id.*, PageID.3714-15].  But the only justification that Dr. Borgerding gave for discontinuing Ranexa was the 2012 catheterization.  [*See* ECF No. 74, PageID.1764; ECF No. 74-1, PageID.1815].  And in his current affidavit, Dr. Borgerding again cited

9

normal catheterizations as being the sole basis for his decisions to deny the Ranexa prescriptions.  [ECF No. 224-2].

On February 10, 2014, Mattox was again admitted to Allegiance Health complaining of angina symptoms.  [ECF No. 217-1, PageID.3746-47].  Mattox's discharge diagnosis was "[n]on-cardiac/musculoskeletal chest pain.  Unstable angina has been completely ruled out," and "[h]ypotension related to the medications."  [*Id.*].  The doctor recommended that both Ranexa and Imdur be discontinued because his chest pain was non-cardiac.  [*Id.*].

After Mattox was discharged from Allegiance Health, he was again prescribed Imdur 30mg and his dosage was doubled on February 25, 2014.  [ECF No. 74-1, PageID.1773].  Mattox blames Dr. Borgerding for the increase in the dosage of his medication on February 25, but PA Ouelette is the only provider shown as ordering the Imdur.  [*Id.*].

In March 2014, Mattox had an emergency appointment with a nurse for chest pains and dizziness despite being prescribed Imdur 60mg.  [ECF No. 127-2, PageID.2552-53].   He was taken by ambulance to the Community Health Center, where it was noted that nitroglycerin had failed to relieve the pain that evening.  [*Id.*, PageID.2554-59].  Mattox was given morphine and released early the next morning.  [*Id.*].  Later that month, an

10

unnamed physician requested approval for a prescription of Ranexa because his angina was not controlled or tolerated well, and "Ranexa allows this patient to exercise without experiencing chest pain."  [ECF No. 127-2, PageID.2550].  Dr. Borgerding denied the request, citing a negative cardiac catheterization in February 2014.  [*Id.*].

Less than a week later, Bhamini Sudir, M.D., saw Mattox to address his complaint of angina pain.  [ECF No. 74-1, PageID.1777-79].  Dr. Sudir tried to discontinue Mattox's Imdur prescription and to prescribe him Ranexa, reasoning that Mattox had chronic angina and multiple hospital runs.  [ECF No. 74-1, PageID.1774-75, 1779].  Dr. Sudir noted that Mattox said that he was asymptomatic when he was on Ranexa and opined that approving the prescription would prevent recurrent emergency room visits. [*Id.*].  Dr. Borgerding again denied the prescription because "with a negative cath, he shouldn't need nitro."  [*Id.*, PageID.1776].  This reasoning is confusing since Dr. Feltoon did not describe Ranexa as being a form of nitroglycerine; he described those as being distinct medications.  [ECF No. 215-4, PageID.3717].

Mattox alleges that he submitted another request for Ranexa in May 2014 because of worsening chest pain, and filed a formal grievance against Dr. Worel in June 2014 for denying him additional medication to control his

11

angina pain.  [ECF No. 184, PageID.3415-16].  A copy of this grievance is not in the record, and it is unclear why Mattox grieved Dr. Worel, as the record does not show that Dr. Worel treated Mattox until February 2015. [ECF No. 217-1, PageID.3751-56].  Of further note, the report reflecting the February 2015 appointment makes no mention of Dr. Worel prescribing Imdur or even discussing the medication with Mattox. [*Id.*].

Neither Mattox's complaint nor the medical record show anything of consequence occurring until June 2016, when Mattox had a chronic care visit with Dr. Worel.  [ECF No. 217-1, PageID.3758-62].  In a description of Mattox's cardiovascular illness, Dr. Worel described it as stable and associated with chest pain, but negative for chest pain that day.  [*Id.*].  Dr. Worel prescribed 30mg of Imdur and nitroglycerin tablets for Mattox's angina; it is unclear what Mattox was taking before this visit.  [*Id.* at PageID.3759-61].  Later than month, Mattox was transported to Mercy Health because of increasing intermittent chest pain, but his workup was "essentially negative."  [*Id.* at PageID.3775, 3780].  It was determined that Mattox's symptoms were caused by a combination of his reflux and a noncardiac cause, and he was told to take his normal medications.  [*Id.*]. The report reflected no specific discussion about Imdur or Ranexa.  [*Id.*].

Mattox alleges that he filed a second formal grievance against Dr. Worel for prescribing Imdur despite his history showing an intolerance for the medication, and that the grievance was denied.  [ECF No. 184, PageID.3416].

Although the factual allegations in Mattox's complaint end in June 2016, Dr. Worel provides records after that period.  They show that Mattox saw Dr. Worel for another chronic care visit in August 2017 during which his angina was stable and his chest pain was "good." [ECF No. 217-1, PageID.3800-05].  But later that month, he refused to take Imdur and was continued with nitroglycerin only.  [*Id.*, PageID.3795-96, 3799].[3]

Mattox alleges that the inadequate medical treatment that he has received has caused him to have limited mobility resulting in weight gain, has forced him to use almost a bottle per month of nitroglycerin tablets, has caused him to have more chest pain and even while at rest, and has forced him to live in constant pain and fear of having a heart attack.  [ECF No.

---

[3] Mattox also includes allegations in his affidavit about events after his December 2017 complaint was filed.  [ECF No. 238, PageID.4030-34]. Since Mattox has neither filed for nor been granted a motion for leave to file a supplemental complaint to add those events to this litigation, they are not considered here.  Fed. R. Civ. P. 15(d) (allowing a court to grant leave to allow a party to file "a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

184, PageID.3417].  He requests that defendants be ordered to prescribe Ranexa and that he be granted compensatory and punitive damages.  [*Id.*, PageID.3418].

## III.  Analysis

### A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief.  *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007); *Davis v. Prison Health Services*, 679 F.3d 433, 437-38 (6th Cir. 2012).

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

14

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A scintilla of evidence is also insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252.

A court may consider forms of hearsay evidence in deciding a motion for summary judgment, but the underlying evidence must be admissible at trial.  *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012).  "For instance, deposition testimony will assist a plaintiff in surviving a motion for summary

judgment, even if the deposition itself is not admissible at trial, provided

substituted oral testimony would be admissible and create a genuine issue

of material fact." *Bailey v. Floyd Cty. Bd. of Educ. By & Through Towler*,

106 F.3d 135, 145 (6th Cir. 1997).

As applied here, Mattox relies in part on affidavits, [*see* ECF No. 238,

PageID.4030-34; ECF No. 258, PageID.4395-99], that include inadmissible

hearsay, including what non-party doctors told him about his medical

condition, and about alleged conversations between nonparties and

defendants about his medications.  Fed. R. Evid. 801(a)-(c).  But

allegations of statements that Mattox made to the defendant doctors for his

medical treatment and what those doctors said to him can be considered.

Rule 801(2)(A) (statement made by an opposing party may be use against

that party is not hearsay); Fed. R. Evid. 803(4) (statements made for

medical diagnosis or treatment are exceptions to the hearsay rule).

**B.**

*Richard Worel, D.O.*

Mattox alleges that Dr. Worel was deliberately indifferent to his

serious medical needs when he (Dr. Worel) failed to prescribe Ranexa for

Mattox's chronic complaints of chest pain.  [ECF No. 184]. "'Deliberate

indifference' by prison officials to an inmate's serious medical needs

16

constitutes 'unnecessary and wanton infliction of pain' in violation of the

Eight[h] Amendment's prohibition against cruel and unusual punishment."

*Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v.*

*Gamble*, 429 U.S. 97, 104 (1976)).

A deliberate indifference claim has an objective and a subjective

component. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The

objective component requires a plaintiff to allege that the medical need at

issue is "'sufficiently serious.'" *Id.* at 702-03 (quoting *Farmer v. Brennan*,

511 U.S. 825, 834 (1994)). "To satisfy the subjective component, the

plaintiff must allege facts which, if true, would show that the official being

sued subjectively perceived facts from which to infer substantial risk to the

prisoner, that he did in fact draw the inference, and that he then

disregarded that risk." *Comstock*, 273 F.3d at 703.  But a plaintiff does not

have to show that the prison official acted "for the very purpose of causing

harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

Instead, a plaintiff need only show that the official "recklessly disregard[ed]"

a substantial risk of serious harm.  *Id.* at 836.  In other words, "the official

must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the

inference."  *Id.* at 837.

17

Dr. Worel argues that Mattox cannot establish either component.  As for the objective component, Dr. Worel contends that Mattox has not shown a sufficiently serious medical need because the evidence shows that his chest pain is noncardiac.  [ECF No. 215, PageID.3696].  But "[c]ourts have regularly held that pain can be a 'sufficiently serious' medical need for purposes of a deliberate indifference claim."  *Burton v. Kakani,* No. 09-10893, 2011 WL 3330370, at \*4 (E.D. Mich. Aug. 3, 2011).  *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1154–55 (6th Cir.1991) ("[A] prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering.").  The Court finds that Mattox's recurrent episodes of chest pain and other symptoms—often described as severe and unstable—were sufficiently serious even if they were noncardiac.

But the Court agrees that Mattox cannot satisfy the subjective component.  Dr. Worel examined Mattox only twice—in February 2015 and June 2016.  The record does not show that Dr. Worel prescribed Mattox Imdur in February 2015 or that they even discussed the medication.  [ECF No. 217-1, PageID.3751-56].  Dr. Worel did prescribe Imdur in June 2016.  [*Id.* at PageID.3759-61].  Yet there is no evidence that he was aware of the indications in the record that Imdur was not effective for Mattox or that it

18

caused side effects.  Mattox's own affidavit does not describe him informing Dr. Worel that he could not tolerate Imdur until June 2018.  [ECF No. 238, PageID.4032].  On this record, the Court recommends that Dr. Worel's motion for summary judgment [ECF No. 215] be granted.

**C.**

*William Borgerding, D.O. & Hanresh Pandya, D.O.*

Drs. Borgerding and Pandya assume for the purpose of their motion that Mattox's angina was sufficiently serious, but they argue that Mattox cannot meet the subjective component of the deliberate indifference because his mere disagreement with his course of treatment is insufficient for him to show that they were deliberately indifferent.  The Court agrees that summary judgment should be granted in favor of Dr. Pandya, but finds that there is a genuine dispute about whether Dr. Borgerding disregarded a substantial risk that his actions would cause Mattox unnecessary pain.

*1*.

The evidence does not show that Dr. Pandya disregarded Mattox's negative experiences with Imdur or his requests for Ranexa.  In September 2011, when informed of Mattox's intolerance to Imdur, Dr. Pandya is the one who suggested trying isosorbide dinitrate, and then approved non-formulary medication with the "ability to titrate up based on angina

response." [ECF No. 74, PageID.1728-29; ECF No. 258, PageID.4404]. The next month, Dr. Pandya did not reject Dr. Glick's recommendation for Ranexa, but instead instructed Dr. Rhodes to consult with the medical director, Dr. Edelman, and increase the dosage of isosorbide dinitrate. [ECF No. 74, PageID.1747]. Mattox alleges in his complaint that, in 2012, Dr. Pandya prescribed Imdur and isosorbide dinitrate instead of Ranexa, which resulted in Mattox experiencing angina symptoms. [ECF No. 184, PageID.3411]. But there is no corroborating medical evidence in the record. And it is undisputed that Dr. Pandya approved Ranexa for eight months, and that it was Dr. Borgerding who did not reapprove the prescription. [ECF No. 74, PageID.1759-60, 64].

Thus, the evidence does not show that Dr. Pandya recklessly disregarded Mattox's poor experience with Imdur. But there is a genuine issue of material fact on whether Dr. Borgerding acted with deliberate indifference.

## 2.

Dr. Borgerding is right that, as a general matter, a prisoner's mere disagreement with his medical treatment, or preference for another medication, does not establish deliberate indifference. *Christian v. Michigan Dep't of Corr.—Health Servs.*, No. 12-12936, 2013 WL 607783, at *6 (E.D.

20

Mich. Jan. 28, 2013), *adopted*, 2013 WL 607779 (E.D. Mich. Feb. 19,

2013).  And "[w]hen a prison doctor provides treatment, albeit carelessly or

inefficaciously, to a prisoner, he has not displayed a deliberate indifference

to the prisoner's needs, but merely a degree of incompetence which does

not rise to the level of a constitutional violation."  *Comstock v. McCrary*, 273

F.3d 693, 703 (6th Cir. 2001).  Still, "a medical professional's actions may

reflect deliberate indifference if he chooses an easier and less efficacious

treatment without exercising professional judgment….  A prison physician

cannot simply continue with a course of treatment that he knows is

ineffective in treating the inmate's condition."  *Arnett v. Webster*, 658 F.3d

742, 753–54 (7th Cir. 2011) (citations and internal quotation marks

omitted).

The facts of *Greeno v. Daley*, 414 F.3d 645 (7th Cir. 2005), are

similar to this case.  The *Greeno* plaintiff suffered heartburn and vomiting

until he was prescribed Prilosec.  *Id.* at 650-51.  When his Prilosec

prescription ran out, medical personnel refused to reapprove it.  *Id.* They

gave Pepto-Bismol instead and disregarded the fact that he began vomiting

again.  *Id.*  The court found that there was sufficient evidence to withstand

summary judgment on the plaintiff's deliberate indifference claim, relying in

part on "the medical defendants' obdurate refusal to alter Greeno's course

21

of treatment despite his repeated reports that the medication was not working and his condition was getting worse."  *Id*. at 654.

See also *Hathaway v. Coughlin*, 37 F.3d 63, 68 (2d Cir. 1994) ("A jury could infer deliberate indifference from the fact that Foote knew the extent of Hathaway's pain, knew that the course of treatment was largely ineffective, and declined to do anything more to attempt to improve Hathaway's situation."); *Fellows v. Baca*, No. CV100698RSWLJEM, 2013 WL 12238537, at *11 (C.D. Cal. June 27, 2013), *adopted*, 2013 WL 12238844 (C.D. Cal. Aug. 14, 2013) ("[T]he pain relief medication and any other treatment that County jail medical personnel prescribed appear to have been largely ineffective in relieving Plaintiff's abdominal pain, and continuing to follow these treatments despite Plaintiff's persisting complaints of pain could show deliberate indifference.").

Here, a jury may find that Dr. Borgerding engaged in an obdurate refusal to terminate Mattox's prescription for Imdur and to approve Ranexa despite repeated reports that Imdur was ineffective and that Ranexa relieved his symptoms.  In December 2013, citing the 2012 normal catheterization, Dr. Borgerding denied reapproval of Ranexa even though Dr. Pandya had approved it only months earlier.  [ECF No. 74, PageID.1760, 1764].  Dr. Borgerding's reasoning is curious since the

22

catheterization results were in the medical record when Dr. Pandya

approved the prescription in June 2013.  [ECF No. 74-1, PageID.1758-59].

Dr. Pandya had approved the prescription because Mattox had been

gaining weight, was unable to walk for extended periods of time, and his

chest pain was not adequately controlled by Imdur.  [*Id.*].  The month after,

Dr. Pandya wrote that Mattox had reported a decrease in the frequency of

the chest pain, and approved Ranexa for another six months.  [*Id.*,

PageID.1760].  With disregard of the notations that Imdur was ineffective

and prevented Mattox from sufficient exercise, and despite the notation that

Ranexa had improved his symptoms, Dr. Borgerding deferred Mattox's

Ranexa prescription.  [*Id.*, PageID.1764].

    The jury may also find that, to locate the 2012 normal catheterization,

Dr. Borgerding must have reviewed Mattox's medical records.  Those

records showed a report in the fall of 2011 that Mattox was unable to

tolerate Imdur, [ECF No. 74, PageID.1728-29, 1739-40]; Dr. Glick's

recommendation that Mattox be prescribed Ranexa in October 2011, [ECF

No. 74, PageID.1744-45]; Dr. Glick's prescription of Ranexa in April 2012

because Mattox "cannot tolerate way long-acting nitrates," [ECF No. 74,

PageID.1748-52]; and the March 2013 discharge order from Community

Health Center, in which the physician included a suggestions to "consider

adding Ranexa," [ECF No. 74, PageID.1757]. With this evidence, coupled with reasons stated when Dr. Pandya approved the Ranexa prescription, a jury may find that Dr. Borgerding, with deliberate indifference, forced Mattox on a course of treatment proven to be ineffective and denied him a prescription that had worked.  If Dr. Borgerding did not review any of that evidence before rejecting the reapproval of the Ranexa prescription, a jury could find that he acted with reckless disregard when overruling Dr. Pandya's professional judgment.

A jury may also find that Dr. Borgerding acted with deliberate indifference in 2014.  In February 2014, shortly after Mattox's Ranexa prescription was discontinued, he was admitted to Allegiance Health complaining of angina symptoms.  [ECF No. 217-1, PageID.3746-47].  The next month, Mattox had an emergency appointment with a nurse for chest pains and dizziness, despite being prescribed 60mg of Imdur.  [ECF No. 127-2, PageID.2552-53].  Later in March 2014, an unnamed physician requested approval for a prescription of Ranexa because his angina was not controlled or tolerated well, and "Ranexa allows this patient to exercise without experiencing chest pain," [ECF No. 127-2, PageID.2550], but Dr. Borgerding again denied the request by relying exclusively on a negative cardiac catheterization in February 2014.  [*Id.*].  Less than a week later, Dr.

Sudir tried to discontinue Mattox's Imdur prescription and to prescribe him
Ranexa because Mattox had chronic angina and multiple hospital runs.
[ECF No. 74-1, PageID.1774-75, 1779].  Dr. Sudir explained that Mattox
said that he was asymptomatic when he was on Ranexa and that
approving the prescription would prevent recurrent emergency room visits.
[*Id.*].  Dr. Borgerding again denied the prescription because "with a
negative cath, he shouldn't need nitro."  [*Id.*, PageID.1776].

With this evidence, a reasonable jury may conclude that Dr.
Borgerding engaged in an "obdurate refusal to alter [Mattox's] course of
treatment despite [ ] repeated reports that the medication was not working
and his condition was getting worse."  *Greeno*, 414 F.3d at 654.

### 3.

Drs. Borgerding and Pandya also claim that they cannot be held
personally liable under a theory of qualified immunity.  [ECF No. 224,
PageID.3881].  Determining the applicability of qualified immunity requires
a two-step inquiry into whether the facts, when viewed in the light most
favorable to the plaintiff, would permit a reasonable juror to find that: (1) the
defendant violated a constitutional right; and (2) the right was clearly
established.  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir.
2005).

25

Drs. Borgerding and Pandya argue that qualified immunity applies because they did not violate Mattox's constitutional rights.  For the reasons stated above, Mattox has failed to show that Dr. Pandya violated a constitutional right, so he is protected by qualified immunity and summary judgment should be entered in his favor.  But there is a genuine issue of material fact about whether Dr. Borgerding violated Mattox's rights under the Eighth Amendment, so summary judgment should be denied for both Mattox's claim under Section 1983 and Dr. Borgerding's claim of qualified immunity.

## D.

### *Kenneth Jordan, M.D.*

Dr. Jordan moves for dismissal under Rule 12(b)(6) or Rule 56 because Mattox failed to bring his Eighth Amendment claim within the applicable statute of limitations.  [ECF No. 225, PageID.3897].  "A defendant raising the statute of limitations as an affirmative defense has the burden of proving that the action is time-barred."  *Proctor v. Applegate*, 661 F. Supp. 2d 743, 760 (E.D. Mich. 2009).  Here, the Court finds that Dr. Jordan has not sustained his burden.

The applicable statute of limitations for a Section 1983 civil rights action is "the state statute of limitations governing actions for personal

26

injury." *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir.

1988).  The Sixth Circuit has held that Michigan's three-year limitations

period for personal injury claims is the applicable statute of limitations for

Section 1983 actions that arise in the state.  *Drake v. City of Detroit,*

*Michigan*, 266 F. App'x 444, 448 (6th Cir. 2008) (citing M.C.L. §

600.5805(10)).

Mattox's complaint alleges that Dr. Jordan treated him in January and

March of 2013, [ECF No. 184, PageID.3411], so the period of limitations

ended in March 2016.  In his motion, Dr. Jordan's argues that Mattox did

not include him as a defendant until the December 2017 fourth amended

complaint, and that Mattox thus failed to file an action against him within

the relevant limitations period.  Mattox responded that he added Dr. Jordan

as a defendant in his September 2014 first amended complaint.  [ECF No.

74; ECF No. 247, PageID.4213].  In reply, Dr. Jordan notes that he was

never served with Mattox's first amended complaint; an order reissuing the

summons for Dr. Jordan was entered in February 2018 and he was served

later that month.  [ECF Nos. 193, 196; ECF No. 250, PageID.4246-47].

According to Dr. Jordan, Federal Rule of Civil Procedure 4(m)

required that the first amended complaint against him be dismissed

because it was not served within the period required by the rule, which was

27

120 days at the time.  But although Rule 4(m) states that the court "must

dismiss the action without prejudice against that defendant" who was not

timely served, the rule also says that the court "*must* extend the time for

service for an appropriate period" if the plaintiff shows good cause.  Rule

4(m) (emphasis added).  Most courts do not even require a showing of

good cause.

> As of this writing, the overwhelming majority of federal courts
> and dicta from the Supreme Court embrace the view that a
> district court has discretion under Rule 4(m) to dismiss a
> complaint or to allow the plaintiff to cure a defect in service of
> process even in the absence of good cause. And as mentioned
> above, the text of Rule 4(m) makes clear that when the plaintiff
> establishes good cause the district court must extend the time
> for service and does not have the discretion to dismiss the
> complaint.

Time Limit for Service, 4B Fed. Prac. & Proc. Civ. § 1137 (4th ed.).  *See*

*also Osborne v. First Union Nat. Bank of Delaware*, 217 F.R.D. 405, 408

(S.D. Ohio 2003) (permitting an extension under Rule 4(m) "even absent a

showing of good cause.").

Dr. Jordan also argues that "the filing of a complaint which is later

dismissed without prejudice for failure to perfect service does not toll the

statute of limitations."  *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28

(6th Cir. 1987).  But Mattox's first amended complaint was never dismissed

for lack of service.  Instead, Mattox and the Court tried to effect service on

28

Dr. Jordan through December 2015.  [*See* ECF No. 112, 116, 122, 135,

146].  In January 2016, this Court filed a report and recommendation to

dismiss Dr. Jordan *sua sponte*, and Judge Michelson adopted that

recommendation in March 2016.  [ECF No. 147, 153].  The Sixth Circuit

reversed the dismissal; the claim against Dr. Jordan was reinstated.  [ECF

Nos. 161-63].  On remand, Mattox filed two motions to amend his complaint

that did not name Dr. Jordan, but after an attorney filed an appearance on

Mattox's behalf, those motions were withdrawn.  [ECF Nos. 172, 174, 182].

The Court then permitted Mattox to amend his pleadings, and a fourth

amended complaint was filed that again named Dr. Jordan as a defendant.

[ECF Nos. 183, 184].

　　　None of this complicated history was addressed in Dr. Jordan's

motion to dismiss and, in fact, Mattox's failure to serve Dr. Jordan within

the Rule 4(m) period was only raised in Dr. Jordan's reply brief.  As a

result, Mattox has had no opportunity to address the aspect of Dr. Jordan's

argument that relies on Rule 4(m).  *United States v. Jerkins,* 871 F.2d 598,

602 n. 3 (6th Cir.1989) (raising an issue for the first time in a reply brief is

impermissible because the opposing party has no opportunity to respond).

And while Dr. Jordan did raise the statute of limitations issue in general in

29

his opening brief, he has not carried his burden of showing that, as a legal

matter, Mattox's claims against him should be dismissed.[4]

## IV.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS**

**GRANTING** Dr. Worel's motion for summary judgment [ECF No. 215];

**GRANTING IN PART AND DENYING IN PART** Drs. Borgerding and

Pandya's motion for summary judgment [ECF No. 224]; and **DENYING** Dr.

Jordan's motion to dismiss [ECF No. 225].


Dated: February 20, 2019                     s/Elizabeth A. Stafford
                                             ELIZABETH A. STAFFORD
                                             United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

---

[4] Dr. Jordan also cites Federal Rule of Civil Procedure 15(c)(1)(C), but that rule applies when a party seeks to correct a mistake about the identity of the defendant.  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010); *Brown v. Cuyahoga Cty., Ohio*, 517 F. App'x 431, 433 (6th Cir. 2013).  Here, Mattox has not added Dr. Jordan in his fourth amended complaint to correct a previous mistake about Dr. Jordan's identity, so Rule 15(c)(1)(C) is inapplicable.

30

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 20, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager